[Crim. No. 5866.   Second Dist., Div. Two.   Oct 11, 1957.]

THE PEOPLE, Respondent, v. ALMA JOYCE KERSEY, Appellant.

Samuel C. McMorris for Appellant.

Edmund G. Brown, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been convicted of assault with a deadly weapon (Pen. Code, § 245), appellant demands a reversal on the grounds of (1) insufficiency of the evidence to sustain the judgment, (2) prejudice suffered by reason of insulting questions propounded by the prosecuting attorney.

The genesis of the crime lay in the innocent act of one Hardy who had purchased at a snack shop two cups of coffee for himself and one James Polk and laid one dollar on the counter. While they were enjoying their refreshment, Hardy was called away to speak with Mr. Vernon who sat nearby in his automobile. Appellant, the waitress, placed the 80 cents change on the counter and it soon found its way into the pocket of the same Polk. After he consumed his coffee, he advanced to the corner in front of the snack shop where he engaged in conversation with a group of men. At the same time Hardy returned with his coffee and asked for his 80 cents. When told that she had given the change to his friend, Hardy requested her to retrieve the money. She approached Mr. Polk and made demand. When he refused to pay, she stabbed him with a knife in the abdomen. He had never conversed with her before and he had not argued with her at any time. For more than a year he had lived in the hotel above the snack shop.

She contends that when she demanded Hardy's 80 cents, Polk refused; that when she threatened to call the police, Polk slapped her; that as she fell, he came toward her with his hand in his pocket; that she was frightened and cut him. But her story was rejected by the court.

■ She now contends that the knife she used was not a deadly weapon in that it was too small and the cut was not severe. It is true that it was a mere pocket knife and that she exhibited it to no one. She said that she later threw it away. In the absence of proof of its length, its dangerous qualities must be inferred by its effective cutting features in the hand of defendant at the time in question. Although it is not inherently dangerous as a matter of law, if the evidence proves that it so opened a man's abdomen as to require hospitalization and an operation, it became a question of fact as to whether it was a dangerous instrument. When a jury has so decided under proper instructions, then its implied finding is final. (*People* v. *McCoy*, 25 Cal.2d 177, 188 [153 P.2d 315].) A nail file that inflicts a "jagged wound" on the face of the person assaulted may be sufficient to support a charge of assault with a deadly weapon. (*People* v. *Russell*, 59 Cal.App.2d 660, 665 [139 P.2d 661].) Even though a knife is not inherently deadly, it may be proved to have been dangerous by showing the manner in which it was used. (*People* v. *Arguilida*, 85 Cal.App.2d 623, 625 [193 P.2d 478].) The prosecution made such proof. Polk underwent an operation at the General Hospital and his scar was in evidence at the trial. That appellant did not use the knife in self-defense was found by the jury and requires no comment. (*People* v. *Adams*, 76 Cal.App. 188, 190 [244 P. 114]; *People* v. *Webster*, 13 Cal.App. 348, 350 [109 P. 637]; *People* v. *La Fleur*, 42 Cal.App.2d 50, 56 [108 P.2d 99]; *People* v. *Bobeda*, 143 Cal.App.2d 496, 500 [300 P.2d 97].)

■ Because Polk contradicted appellant's testimony on all material points, neither slapped her nor argued with her nor made any of the statements she attributed to him, the resulting conflict was properly resolved by the jury. (*People* v. *Adams, supra*; *People* v. *Rilarcosa*, 19 Cal.App.2d 537, 540 [65 P.2d 1325].)

■ The claim that the testimony of Mr. Polk was inherently improbable is without support in law. (See *People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Gardner*, 147 Cal.App.2d 530, 536 [305 P.2d 614]; *People* v. *Carr*, 113 Cal.App.2d 783, 786 [248 P.2d 977]; *People* v. *Thomas*, 103 Cal.App.2d 669, 672 [229 P.2d 836].) There is nothing inherently improbable in Mr. Polk's testimony. While he stood in front of the snack shop, she stabbed him. She may have been allergic to his personality, or infuriated at his discourtesy toward her patron, or at what she may have thought to

be a theft, or she may have been zealous to show her loyalty to her employer. At any rate, the court found that she was the aggressor and did not cut in self-defense.

The claim that Polk should have been corroborated is based upon wishful thinking. With the exception of treason, perjury, and a few other crimes, corroboration is not required. One witness is sufficient proof of the crime of assault with a deadly weapon if he is believed by the fact finder. (*People* v. *Oliver,* 102 Cal.App. 29, 34 [282 P. 813]; *People* v. *McCrasky,* 149 Cal.App.2d 630, 635 [309 P.2d 115].)

The questions complained of as having been asked by the prosecuting attorney were not prejudicial. When appellant's witness Patricia was asked whether appellant "comes into the bar where you work every night?" it was asked as a method of impeaching the witness, not to degrade her. It was a means of proving an intimate relationship with appellant and a bias in her favor. (*People* v. *Bush,* 71 Cal. 602, 607 [12 P. 781]; *People* v. *Krug,* 10 Cal.App.2d 172 [21 P.2d 445].)

The questions to appellant as to why she had failed to call the police were for the purpose of showing her consciousness of guilt. (See *People* v. *O'Bryan,* 165 Cal. 55, 60 [130 P. 1042].)

The statement of the prosecuting attorney that the judge would not need protection at Fifth and Central if he were not down there was not scurrilous or critical. It was no more than light banter. It was not prejudicial.

For the same reason, there was no prejudice in the colloquy of state's counsel and appellant's witness Douglas:

"Q. Did you ask him how he was getting along with his 'old lady'?

"A. Of course not. Naturally the girl attracts me much more than a man would.

"Q. Can we safely say it wasn't your week for men?"

Inasmuch as the jury disbelieved appellant and her witnesses to the effect that she used the knife to protect herself from threatened harm, but believed that she left the snack bar looking for trouble and stabbed the man she approached, the judgment should stand.

Affirmed.

Fox, J., and Ashburn, J., concurred.